IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KELLY TERRY,  No. CIV S-04-2451-MCE-CMK-P

    Plaintiff,

 vs.  ORDER

JUSTIN WARD, et al.,

    Defendants.

_____/

    Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's second amended complaint (Doc. 15), filed on May 13, 2005.[1]

    The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if it: (1) is frivolous or

---

[1] Plaintiff's initial pleading in this case was addressed in the court's November 30, 2004, order which granted plaintiff an opportunity to file a properly styled amended complaint. Rather than filing an amended complaint, however, plaintiff filed a document entitled "Motion to Vacate Judgment." On April 13, 2005, the court issued an order granting plaintiff an additional opportunity to file a proper complaint. The instant second amendment to the initial pleading followed. The court therefore refers to this document as the second amended complaint.

malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1), (2).  Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly.  See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the court to conduct the screening required by law when the allegations are vague and conclusory.

**I. BACKGROUND**

Plaintiff names the following as defendants:  Baxter Dunn; John Drummond; Terrence Van Oss; Richard J. Guilani; James E. Hammerstone; Anthony P. Lucaccini; Mallett; Garrigan; Kenneth Puckett; Kevin Mayo; Sarah B. Telschow; Elvira Luna; Paul Shultz; Erik Lundeberg; Tim Quinn; Mark Ambrose; Janice Everett; John D. Phillips; Justin Ward; Edward Joseph III; Erdelatz; John Joseph Reyes; Monica Serros; Malloy; Eduardo Borrows; Steve Gutierrez; Dario Marenco; Victor Mow; Jack Sieglock; Leroy Ornellas; and the "California Board of Corrections."[2]  Defendants Oss, Guilani, Hammerstone, Lucaccini, Mallett, and Garrigan are state court judges.  Defendants Telschow, Luna, Schultz, Lundeberg, Quinn, Ambrose, and Everett are public defenders.  Defendants Phillips, Puckett, and Mayo are state prosecuting attorneys.  Defendants Gutierrez, Marenco, Mow, Sieglock, and Ornellas are

---

[2] Because there is no such entity as the "California Board of Corrections," the court considers this as referring to the California Department of Corrections.

1  members of the San Joaquin County Board of Supervisors.

2  Plaintiff claims that, on February 23, 2005,[3] he was arrested by defendant Ward.
3  Plaintiff states that he was not read his rights. Plaintiff next claims that, while in custody at jail,
4  he suffered a "panic or anxiety" attack caused by extreme stress. Plaintiff states that he was
5  allowed to see a staff psychiatrist, but that she yelled at him, had him strip, and placed plaintiff
6  in an observation cell. Plaintiff states that he was then moved to a "suicide cell," which was
7  cold, and that the psychiatrist failed to continue to check on him.

8  Plaintiff states that he was released from jail on bail and attempted to contact his
9  public defender over the course of the following week. Plaintiff states that he eventually
10 appeared in court for a scheduled court appearance and that the prosecutor asked that plaintiff be
11 remanded back to custody and that his bail be increased, which the judge did. Plaintiff states
12 that he was not allowed to testify at this hearing. Plaintiff states that, as a result of being
13 remanded back to custody, he was unable to attend to personal matters and, as a result, suffered
14 "severe mental anguish."

15 Plaintiff also claims that his public defender shared privileged information and
16 refused to help him. Plaintiff states that he then hired a private attorney but that he was granted
17 leave to withdraw because plaintiff would not consider a plea agreement.

18 Plaintiff alleges that, after he was convicted, he was directed to report to adult
19 probation. While plaintiff states that he reported as ordered, he also states that he was later
20 arrested for not reporting to his probation officer and for not notifying the probation office of his
21 current address.

22 / / /

23 / / /

24 ---

25 [3] It is unclear whether this is the correct date given that this action was originally filed in 2004. The court notes that, elsewhere in the complaint, plaintiff refers to dates in 2003
26 and 2004.

Plaintiff states that he was again arrested and charged with robbery, murder in the commission of a robbery, possession of cocaine, and evading a police officer. Plaintiff asserts that the court appointed a public defender to represent him, but that she would not give him a copy of the criminal complaint because he wouldn't understand it. Plaintiff complains of a number of procedural defects associated with this arrest. Plaintiff asserts that a second public defender assigned to his case did not follow up.

At the conclusion of this list of allegations, plaintiff states that ". . . the court violated my constitutional rights by ignoring my request for due process, adequate contact with general community, medical care when requested, right to counsel, right to speedy trial, access to the courts, to privacy, not to be inflicted with cruel and unusual punishment, confiscation of property without a receipt."

Next, plaintiff asserts a series of allegations concerning his confinement in the San Joaquin County Jail. Those allegations include:

1. Staff failed to accurately report an incident where staff threatened and assaulted plaintiff;
2. Staff did not properly process plaintiff's grievances;
3. Plaintiff was assaulted by staff;
4. Staff would not assist plaintiff in reporting "crimes" to the sheriff;
5. Staff delayed or denied medical care;
6. Staff confiscated personal belongings;
7. Staff refused to provide clean clothes;
8. Rules and regulations are not posted in the jail;
9. Staff interfered with mail;
10. Staff missed giving medications;
11. Plaintiff was exposed to inmates with contagious disease; and
12. Staff maintained records in a biased manner or re-wrote records.

Plaintiff's complaint asserts the following claims for relief:[4]

| | |
|---|---|
| "1st Claim for Relief: | Summary Punishment of Pretrial Prisoners Without Due Process" |
| "2nd Claim for Relief: | Denial to Pretrial Prisoners of Equal Protection of Law" |
| "3rd Claim for Relief: | Prejudice to a Fair Trial" |
| "4th Claim for Relief: | Denial of Due Process in Disciplinary and Administrative Proceedings" |
| "5th Claim for Relief: | Cruel and Unusual Punishment" |
| "6th Claim for Relief: | Violations of California Law" |
| "7th Claim for Relief: | Inadequate Medical Care" |
| "8th Claim for Relief: | Access to Counsel and to the Courts" |
| "9th Claim for Relief: | Denial Right of Citizens to Persons Life, Liberty, or Property Except According to Law" |

Plaintiff appears to seek monetary damages as well as various forms of equitable relief.

## II. DISCUSSION

The amended complaint currently before the court suffers from a number of defects.[5] First, the complaint seeks relief from the California Department of Corrections, which enjoys immunity under the Eleventh Amendment. Second, defendants Oss, Guilani, Hammerstone, Lucaccini, Mallett, and Garrigan are state court judges who are entitled to judicial

---

[4] Because pages 44 and 46 of the complaint are missing, the court cannot determine whether these are the only claims plaintiff asserts.

[5] The court will identify a number of the primary defects and provide plaintiff an opportunity to amend in an attempt to narrow this action to cognizable claims that are appropriate for service. This is not to say, however, that other defects do not exist. If plaintiff files a further amended complaint which adequately addresses the defects identified in this order, the court will address other defects if they still exist.

immunity.  Third, defendants Phillips, Puckett, and Mayo, are state prosecutors who are entitled to prosecutorial immunity.  Fourth, defendants Telschow, Luna, Schultz, Lundeberg, Quinn, Ambrose, and Everett are public defenders who are not acting under color of state law for purposes of § 1983.  Fifth, the complaint asserts numerous claims which challenge the validity of plaintiff's conviction and continued confinement and, as such, are not cognizable under § 1983 but must be raised in a habeas corpus proceeding.  Sixth, to the extent plaintiff asserts claims against members of the San Joaquin County Board of Supervisors, the complaint fails to adequately allege municipal liability under § 1983.  Seventh, to the extent plaintiff asserts claims against supervisory personnel, the complaint fails to adequately allege supervisory liability under § 1983.  Finally, as to plaintiff's substantive claims for relief, the court will provide plaintiff guidance for further amendment of the complaint.

### A. **Eleventh Amendment Immunity**

The Eleventh Amendment prohibits federal courts from hearing suits brought against a state both by its own citizens, as well as by citizens of other states.  See Brooks v. Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1053 (9th Cir. 1991).  This prohibition extends to suits against states themselves, and to suits against state agencies.[6]  See Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Here, plaintiff names the California Department of Corrections, which is immune under the Eleventh Amendment.  By findings and recommendations issued herewith, the court will recommend dismissal of the action as against defendant California Department of Corrections.

///

---

[6] A state's agency responsible for incarceration and correction of prisoners is a state agency for purposes of the Eleventh Amendment.  See Alabama v. Pugh, 438 U.S. 781, 782 (1978) (per curiam); Hale v. Arizona, 993 F.2d 1387, 1398-99 (9th cir. 1993) (en banc).

### B. Judicial Immunity

Judges are absolutely immune from damage actions for judicial acts taken within the jurisdiction o their courts. See Schucker v. Rockwood, 846 F.2d 1202, 1204 (9th Cir. 1988) (per curiam). This immunity is lost only when the judge acts in the clear absence of all jurisdiction or performs an act that is not judicial in nature. See id. Judges retain their immunity even when they are accused of acting maliciously or corruptly, see Mireles v. Waco, 502 U.S. 9, 11 (1991) (per curiam); Stump v. Sparkman, 435 U.S. 349, 356-57 (1978), and when they are accused of acting in error, see Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999).

Here, the complaint names as defendants Oss, Guilani, Hammerstone, Lucaccini, Mallett, and Garrigan, all of whom are state court judges. Because the complaint alleges liability for these defendants based on judicial acts taken within their jurisdiction, they are entitled to absolute judicial immunity. By findings and recommendations issued herewith, the court will recommend dismissal of the action as against defendants Oss, Guilani, Hammerstone, Lucaccini, Mallett, and Garrigan.

### C. Prosecutorial Immunity

Prosecutorial immunity protects eligible government officials when they are acting pursuant to their official role as advocate for the state. See Imbler v. Pachtman, 424 U.S. 409, 430 (1976). This immunity extends to actions during both the pre-trial and post-trial phases of a case. See Demery v. Kupperman, 735 F.2d 1139, 1144 (9th Cir. 1984). State prosecutors are entitled to absolute prosecutorial immunity for acts taken in their official capacity. See Kalina v. Fletcher, 522 U.S. 118, 123-25 (1997).

Here, the complaint names as defendants Phillips, Puckett, and Mayo, all of whom are state prosecutors. Because all of the allegations concerning these defendants relate to their official actions, they are entitled to absolute prosecutorial immunity. By findings and recommendations issued herewith, the court will recommend dismissal of the action as against defendants Phillips, Puckett, and Mayo.

### D. Public Defenders not Acting "Under Color of State Law"

When public defenders are acting in their role as advocates, they are not acting "under color of state law" for purposes of liability under § 1983. See Georgia v. McCollum, 505 U.S. 42, 53 (1992); Polk County v. Dodson, 454 U.S. 312, 320-25 (1981). Here, the complaint names Telschow, Luna, Schultz, Lundeberg, Quinn, Ambrose, and Everett, all of whom were plaintiff's defenders. By findings and recommendations issued herewith, the court will recommend dismissal of the action as against defendants Telschow, Luna, Schultz, Lundeberg, Quinn, Ambrose, and Everett.

### E. Claims Sounding in Habeas Corpus

When a state prisoner challenges the legality of his custody and the relief he seeks is a determination that he is entitled to an earlier or immediate release, such a challenge is not cognizable under 42 U.S.C. § 1983 and the prisoner's sole federal remedy is a petition for a writ of habeas corpus. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); see also Neal v. Shimoda, 131 F.3d 818, 824 (9th Cir. 1997); Trimble v. City of Santa Rosa, 49 F.3d 583, 586 (9th Cir. 1995) (per curiam). Similarly, where a § 1983 action seeking monetary damages or declaratory relief alleges constitutional violations which would necessarily imply the invalidity of the prisoner's underlying conviction or sentence, such a claim is not cognizable under § 1983 unless the conviction or sentence has first been invalidated on appeal, by habeas petition, or through some similar proceeding. See Edwards v. Balisok, 520 U.S. 641, 646 (1987) (holding that § 1983 claim not cognizable because allegations of procedural defects and a biased hearing officer implied the invalidity of the underlying prison disciplinary sanction); Heck v. Humphrey, 512 U.S. 477, 483-84 (1994) (concluding that § 1983 not cognizable because allegations were akin to malicious prosecution action which includes as an element a finding that the criminal proceeding was concluded in plaintiff's favor); Butterfield v. Bail, 120 F.3d 1023, 1024-25 (9th Cir. 1997) (concluding that § 1983 claim not cognizable because allegations of procedural defects were an attempt to challenge substantive result in parole hearing); see also Neal, 131 F.3d at 824

(concluding that § 1983 claim was cognizable because challenge was to conditions for parole eligibility and not to any particular parole determination).

Here, the complaint raises a number of claims which sound in habeas corpus. In particular, plaintiff appears to assert that he was denied effective assistance of counsel during his criminal proceedings. Such a claim attacks the fairness of the underlying criminal proceedings and, as such, sounds in habeas. Plaintiff also alleges various procedural defects in the course of his criminal case. Again, such claims sound in habeas because they go to the fairness of his criminal proceedings. Plaintiff also alleges "prejudice to a fair trial," which sounds in habeas. Finally, to the extent plaintiff challenges the validity of jail disciplinary proceedings, such claims also must first be raised in a habeas corpus action.

If a § 1983 complaint states claims which sound in habeas, the court should not convert the complaint into a habeas petition. See Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997); Trimble, 49 F.3d at 586. Rather, such claims must be dismissed without prejudice and the complaint should proceed on any remaining cognizable § 1983 claims. See Balisok, 520 U.S. at 649; Heck, 512 U.S. at 487; Trimble, 49 F.3d at 585. Plaintiff will be provided an opportunity to omit claims sounding in habeas corpus from his next amended complaint. However, should such claims persist, the court will recommend dismissal.

### F. Municipal Liability

Municipalities and other local government units are among those "persons" to whom § 1983 liability applies. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). Counties and municipal government officials are also "persons" for purposes of § 1983. See id. at 691; see also Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir. 1989). A local government unit, however, may not be held responsible for the acts of its employees or officials under a respondeat superior theory of liability. See Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997). Thus, municipal liability must rest on the actions of the municipality, and not of the actions of its employees or officers. See id. To assert municipal liability, therefore, the

plaintiff must allege that the constitutional deprivation complained of resulted from a policy or custom of the municipality. See id. A claim of municipal liability under § 1983 is sufficient to withstand dismissal even if it is based on nothing more than bare allegations that an individual defendant's conduct conformed to official policy, custom, or practice. See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 624 (9th Cir. 1988).

Plaintiff's complaint alleges claims against a number of defendants who are members of the San Joaquin County Board of Supervisors. Plaintiff will be provided an opportunity to amend the complaint consistent with the foregoing standard.

### G.  **Supervisory Liability**

Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor, 880 F.2d at 1045 (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. See id.  When a defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff's complaint alleges claims against a number of defendants who hold supervisory positions. Plaintiff will be provided an opportunity to amend the complaint consistent with the foregoing standard.

/ / /

/ / /

/ / /

/ / /

### H. Plaintiff's Substantive Claims

In an effort to provide plaintiff some guidance in drafting a further amendment to the complaint, the court will discuss plaintiff's substantive claims as against the remaining defendants.[7]

#### 1. Equal Protection

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). Prisoners are protected from invidious discrimination based on race. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Racial segregation is unconstitutional within prisons save for the necessities of prison security and discipline. See Cruz v. Beto, 405 U.S. 319, 321 (1972) (per curiam). Prisoners are also protected from intentional discrimination on the basis of their religion. See Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997). In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

/ / /

/ / /

---

[7] If the findings and recommendations issued herewith are adopted, the action will proceed as against the following defendants only: Dunn; Drummond; Ward; Joseph; Erdelatz; Reyes; Serros; Malloy; Borrows; Gutierrez; Marenco; Mow; Sieglock; and Ornellas.

11

2. Conditions of Confinement

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

When prison officials stand accused of using excessive force, the core judicial inquiry is ". . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the fact of risk of injury to inmates or prison employees. See Whitley, 475 U.S. at 320-21. In determining whether force was excessive, the court considers the following factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response. See Hudson, 503 U.S. at 7. The absence of an emergency situation is probative of whether force was applied maliciously or sadistically. See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc). The lack of injuries is also probative. See Hudson, 503 U.S. at 7-9. Finally, because the use of force relates to the prison's legitimate penological interest in

maintaining security and order, the court must be deferential to the conduct of prison officials. See Whitley, 475 U.S. at 321-22.

### 3. Due Process

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought. See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972). Due process protects against the deprivation of property where there is a legitimate claim of entitlement to the property. See Bd. of Regents, 408 U.S. at 577. Protected property interests are created, and their dimensions are defined, by existing rules that stem from an independent source – such as state law – and which secure certain benefits and support claims of entitlement to those benefits. See id.

Liberty interests can arise both from the Constitution and from state law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993). In determining whether the Constitution itself protects a liberty interest, the court should consider whether the practice in question ". . . is within the normal limits or range of custody which the conviction has authorized the State to impose." Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405. In determining whether state law confers a liberty interest, the Supreme Court has adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. See Sandin v. Connor, 515 U.S. 472, 481-84 (1995). In doing so, the Court has held that state law creates a liberty interest deserving of protection only where the deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84.

///

Applying these standards, the Supreme Court has concluded that prisoners have no liberty interest in good-time credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin, 515 U.S. at 485-86; in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308, 323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or in remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47 (1983). The Ninth Circuit has concluded that prisoners have no liberty interest in remaining free from administrative segregation or solitary confinement. See May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997).

Where a prisoner alleges the deprivation of a liberty or property interest caused by the unauthorized action of a prison official, there is no claim cognizable under 42 U.S.C. § 1983 if the state provides an adequate post-deprivation remedy. See Zinermon v. Burch, 494 U.S. 113, 129-32 (1990); Hudson v. Palmer, 468 U.S. 517, 533 (1984). A state's post-deprivation remedy may be adequate even though it does not provide relief identical to that available under § 1983. See id. at 531 n.11.

Finally, with respect to prison disciplinary proceedings, due process requires prison officials to provide the inmate with: (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the inmate, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. See Wolff, 418 U.S. at 563-70. Due process is satisfied where these minimum requirements have been met, see Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), and where there is "some evidence" in the record as a whole which supports the decision of the hearing officer, see Superintendent v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached." Id. at 455-56.

####     4.      Medical Care

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to under the Eighth Amendment.  See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).  Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns.  See McGuckin, 974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989).  The complete denial of medical attention may constitute deliberate indifference.  See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference.  See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim.  See Jackson

1 v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

        5.        Access to Courts

Prisoners have a constitutional right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance procedures). This right requires prison officials to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828. The right, however, only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. See Lewis, 518 U.S. at 356-57. Moreover, the right is limited to non-frivolous criminal appeals, habeas corpus actions, and § 1983 suits. See id. at 353 n.3 & 354-55. Therefore, the right of access to the courts is only a right to present these kinds of claims to the court, and not a right to discovery claims or to litigate them effectively once filed. See id. at 354-55.

As a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury. See id. at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a claim. See id. Delays in providing legal materials or assistance which result in prejudice are "not of constitutional significance" if the delay is reasonably related to legitimate penological purposes. Id. at 362.

///
///
///
///
///
///

### III. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, plaintiff is entitled to leave to amend prior to dismissal of the entire action. See Lopez, 203 F.3d at 1126, 1131. Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, if plaintiff amends the complaint, the court cannot refer to the prior pleading in order to make plaintiff's amended complaint complete. See Local Rule 15-220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Finally, plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260-61; see also Local Rule 11-110. Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

///

///

///

1         Accordingly, IT IS HEREBY ORDERED that:

2         1.    Plaintiff's second amended complaint, filed on May 13, 2005, is dismissed

3 with leave to amend; and

4         2.    Plaintiff shall file a third amended complaint within 30 days of the date of

5 service of this order.

7 DATED: November 2, 2005.

                                                 **CRAIG M. KELLISON**
                                                 UNITED STATES MAGISTRATE JUDGE